UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| BURNIS PULLEY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | NO. 2:17CV471-PPS |
|  | ) |  |
| JENNIFER SAAD, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**OPINION AND ORDER**

Before the Court is Movant Burnis Pulley's Amended Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241. [DE 9.] Pulley seeks habeas corpus relief on the basis that the Supreme Court's holding in *Mathis v. United States*, 136 S. Ct. 2243 (2016), renders his sentence in excess of the statutory maximum. For the reasons that follow, I will deny his petition.

**Background**

Burnis Pulley pleaded guilty without a plea agreement on February 18, 2005, to illegally possessing a firearm as a felon. [DE 22 in Case No. 2:04-CR-12.] I sentenced him on November 15, 2005 to 200 months' imprisonment based on a finding that Pulley had at least three qualifying violent felonies or serious drug offense convictions under the Armed Career Criminal Act, 18 U.S.C. § 924(e). [DE 30 in Case No. 2:04-CR-12.] Pulley's sentence was affirmed on appeal. [DE 42 in Case No. 2:04-CR-12.]

On July 29, 2013, Pulley filed a motion to vacate under 28 U.S.C. § 2255. [DE 48 in

1

Case No. 2:04-CR-12.] He sought relief under *Descamps v. United States*, 570 U.S. 254 (2013), and argued that in light of this precedent, he no longer had three qualifying convictions for purposes of ACCA. I denied his motion. [DE 52 in Case No. 2:04-CR-12.] Later, Pulley sought authorization from the Seventh Circuit to file a second or successive § 2255 motion. There he sought relief under *Johnson v. United States*, 135 S. Ct. 2551 (2015). The Seventh Circuit denied authorization, however, and noted that Pulley's claim actually arises under *Mathis v. United States*, 136 S. Ct. 2243 (2016). [DE 56 in Case No. 2:04-CR-12; *see also* Case No. 17-1168 (7th Cir. Filed Feb. 7, 2017).]

Pulley now seeks relief under 28 U.S.C. § 2241 on the basis that 28 U.S.C. § 2255, the provision under which he previously sought relief, is inadequate and ineffective to test the legality of his detention. Ordinarily, petitions filed under § 2241 are heard in the district where the petitioner is being housed. Pulley is being housed in the Northern District of West Virginia, so one might wonder why the matter is before this court. It is here because the case was transferred to this district on grounds that I think are rather dubious. [*See* DE 24.] But the government chose not to fight the transfer [*see* DE 27 at 3-4], so the matter is before me for decision.

## Discussion

Federal prisoners who seek to bring collateral attacks on their convictions or sentences must ordinarily bring an action under 28 U.S.C. § 2255, otherwise known as the "federal prisoner's substitute for habeas corpus." *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). Section 2255 provides that all applications for a writ of habeas corpus,

2

filed on behalf of a prisoner who is authorized to apply for relief under § 2255, shall be brought pursuant to that section, and no other motions for habeas relief are to be entertained. 28 U.S.C. § 2255(e). This provision contains one exception, however: "a federal prisoner may petition under [28 U.S.C.] § 2241 'if his section 2255 remedy is inadequate or ineffective to test the legality of his detention.'" *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013) (quoting *Rios*, 696 F.3d at 640)); *see also* 28 U.S.C. § 2255(e). This mechanism has been dubbed the "savings clause." *See Brown*, 719 F.3d at 586.

Divining what Congress meant by "inadequate or ineffective" has been a difficult task, to say the least. The Courts of Appeals have adopted divergent approaches to defining this term of art, and they have developed different tests to decipher what circumstances qualify for relief outside of the § 2255 context. The Seventh Circuit has the most prisoner-friendly standard, which is why this case ended up here in the first place. [*See* DE 20.]

*In re Davenport* establishes three conditions that must apply in order for a federal prisoner to obtain relief. 147 F.3d 605, 611-12 (7th Cir. 1998). First, the prisoner must rely on a case of statutory interpretation, rather than constitutional law. *Rios*, 696 F.3d at 640. Second, that case must be a retroactive decision that could not have been invoked in a prisoner's first § 2255 motion. *Id.* Third, the sentence enhancement must have been "a grave enough error to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding." *Id.*; *see also In re Davenport*, 417 F.3d at 611 (a prisoner must show "a fundamental defect in his conviction or sentence."). With respect to the third

3

condition, the Seventh Circuit, departing from other circuits, allows prisoners to "utilize the savings clause to challenge the misapplication of the [mandatory] career offender Guideline," *Brown*, 719 F.3d at 588, as well as an erroneous enhancement under ACCA, *Light v. Caraway*, 761 F.3d 809, 813 (7th Cir. 2014).

Given this standard and the state of the law, this case presents some murky questions about when § 2241 relief is available and what standards should apply. This is all further complicated by the fact, as noted above, that § 2241 motions are typically brought in the district of confinement, which in this case is actually West Virginia. But this case has a much simpler answer. Even assuming Pulley is entitled to have his petition addressed on the merits, it nonetheless must be denied because Pulley's arguments are foreclosed by Seventh Circuit precedent.

Before diving into the merits of the instant motion, it's necessary to understand a bit about ACCA and why Pulley was sentenced as he was. Section 924(e) provides that:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1). The statute, in effect, imposes a 15-year mandatory minimum sentence if the defendant is convicted of being a felon in possession of a firearm — a conviction under § 922(g) — and has three prior convictions that constitute violent

felonies or serious drug offenses. *Id.* Absent the ACCA enhancement, a violation of § 922(g) carries a maximum penalty of 10 years. 18 U.S.C. § 924(a)(2).

ACCA defines the term "violent felony" to include any felony, whether state or federal, that is "burglary, arson, or extortion." 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court has held that, in listing those crimes, Congress was referring only to their generic version, *i.e.*, the offense as commonly understood, not to all variants of the offenses. *See Taylor v. United States*, 495 U.S. 575, 598 (1990). This holding of the Supreme Court thus requires judges, before imposing an ACCA enhancement, to determine whether a prior conviction for a state offense is broader than the generic version of that offense. To do this, courts compare the elements of the crime of conviction with the elements of the generic version of the offense. If the elements of the prior conviction are the same as, or narrower than, the elements of the generic offense, the prior conviction qualifies as an ACCA predicate. *Mathis*, 136 S. Ct. at 2247. This approach has become known as the categorical approach.

Some statutes, however, were not amenable to this analysis because of their more complicated structure. These so-called "divisible" statutes list elements in the alternative and thereby define multiple crimes. *Descamps*, 570 U.S. at 260-61. The Supreme Court approved of a "modified categorical approach" for these types of statutes, permitting judges to look at the record of conviction to determine which of the elements was integral to the defendant's conviction. *Id.*; *see also Shepard v. United States*, 544 U.S. 13, 26 (2005).

The case that Pulley argues provides him habeas relief is *Mathis v. United States*, 136 S. Ct. 2243 (2016). In *Mathis*, the Supreme Court was presented with the question of how to treat a state statute that enumerates various factual means of committing a single element. *Id.* at 2249. The Court held that, where a statute sets forth various means of committing a single element, the categorical approach — not the modified categorical approach, which permits a look at the state court conviction records — must be employed. *Id.* In other words, a strict comparison of the elements of the generic offense to the elements of the prior conviction is required.

Turning to the merits of Pulley's petition, *Mathis* was a case of statutory interpretation, rather than one of constitutional law. And the Seventh Circuit has held that *Mathis* is a retroactive decision, *Holt v. United States*, 843 F.3d 720, 721-22 (7th Cir. 2016) (retroactive and not a new rule of constitutional law), and so Pulley meets the first and second prong of this Circuit's test as set forth in *In re Davenport*.

Pulley's petition nonetheless fails on the third prong of the test. Pulley is not entitled to relief because *Mathis* has no effect on Pulley's prior convictions for purposes of the ACCA enhancement. Thus, there was no misapplication of ACCA and likewise no error in sentencing that would constitute a miscarriage of justice.

At the time of his sentencing, I determined that the enhanced penalty under ACCA applied to Pulley on the basis of four prior convictions: (1) Illinois residential burglary in violation of 720 ILCS 5/19-3; (2) Illinois robbery in violation of 720 ILCS 5/18-1(a); (3) Illinois aggravated battery causing bodily harm in violation of 720 ILCS

5/12-4(b)(8); and (4) Illinois possession with intent to deliver controlled substances in violation of 720 ILCS 570/401(c)(2). Because his second and third prior convictions involved the same conduct, only one counted towards ACCA, but Pulley nonetheless still had three qualifying convictions. In his petition, Pulley argues that only the first prior conviction – Illinois residential burglary in violation of 720 ILCS 5/19-3 – is no longer a predicate offense under ACCA. Pulley says that this is because, in light of *Mathis*, Illinois' statute is overly broad when compared to generic burglary.

Not so. The Seventh Circuit has already rejected a similar challenge to the Illinois residential burglary statute under which Pulley's first predicate was charged. The version of that statute in effect at the time of Pulley's conviction (1989) was the same version of the statute analyzed by the Seventh Circuit in *Smith v. United States*, 877 F.3d 720 (7th Cir. 2017). There the Seventh Circuit held that a "violation of 720 ILCS 5/19-3 is generic burglary for the purpose of § 924(e) and similar federal recidivist statutes." *Id.* at 721-24; *see also Shields v. United States*, 885 F.3d 1020, 1022-23 (7th Cir. 2018) (employing *Smith*'s reasoning to reject similar challenge).

In reaching this conclusion, the Seventh Circuit analyzed the statute in effect at the time under the categorical approach as explained in *Mathis* – the exact approach that Pulley urges in his petition here. Under the version of 720 ILCS 5/19-3 in effect from 1982 to 2001, a "person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." 720 ILCS 5/19-3(a). Another statute defines "dwelling":

7

> (a) Except as otherwise provided in subsection (b) of this Section, "dwelling" means a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as a human habitation, home or residence.
>
> (b) For the purposes of Section 19-3 of this Code, "dwelling" means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside.

720 ILCS 5/2-6. Subsection (a) is of no matter since it does not apply to the crime of residential burglary. *Smith*, 877 F.3d at 723, 724. Instead, to be convicted of residential burglary in Illinois, "a person must enter 'a house, apartment, mobile home, trailer, or other living quarters.'" *Id.* at 722 (quoting 720 ILCS 5/2-6(b)).

The Seventh Circuit then compared the Illinois statute to the generic offense of burglary, which the Supreme Court has defined as "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure with intent to commit a crime." *Taylor*, 495 U.S. at 599. The Seventh Circuit noted that Illinois' definition of "dwelling" seemed to come within *Taylor*'s reference to a "building or structure." *Smith*, 877 F.3d at 722. Looking to the plain language of other Illinois statutes, the Seventh Circuit rejected the defendants' arguments that a "mobile home" and a "trailer" are not structures. *Id.* at 722-23.

As a result, the crime in 720 ILCS § 5/19-3 was not broader than generic burglary, even under the *Mathis* approach, and it constituted burglary for purposes of § 924(e)(2)(B)(ii). Therefore, the defendants, whose prior convictions were under the Illinois statute, were properly sentenced as armed career criminals. *Smith*, 877 F.3d at

8

725.

As I explained before, Pulley was convicted under the exact same statute at issue in *Smith*, which the Seventh Circuit held constitutes an ACCA predicate even in light of recent Supreme Court precedent. Accordingly, Pulley's argument is foreclosed by *Smith*. Simply put, his first predicate was a 1989 conviction for residential burglary under 720 ILCS § 5/19-3; it continues to constitute a predicate for purposes of ACCA; and *Mathis* does not compel a different outcome.

In his reply, Pulley switches gears and argues that his 1999 possession with intent to deliver a controlled substance is broader than the generic federal definition of a "serious drug offense," so it does not count as a predicate under ACCA. [DE 31 at 4-10 in 2:17-CV-471.] Arguments raised for the first time in a reply brief are waived. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 843 (7th Cir. 2018); *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005). But even reaching the merits, Pulley's challenge to his Illinois drug distribution conviction fails.

Pulley argues that his Illinois drug offense does not qualify as a serious drug offense because he thinks Illinois' prohibition of "delivery" makes it broader than the definition of a "serious drug offense" as defined under ACCA. His conviction of violating Illinois' drug statute makes it unlawful to "knowingly . . . manufacture or deliver, or possess with intent to manufacture or deliver" a controlled substance. 720 ILCS 570/401. "Delivery" is defined as the "actual, constructive, or attempted transfer of possession of a controlled substance." 720 ILCS 570/102(h). A serious drug offense

9

under ACCA is "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). To determine whether a prior conviction qualifies as a serious drug offense, I apply the categorical approach and look only to the statute's elements, not the facts underlying Pulley's conviction. *United States v. Lopez*, 890 F.3d 332, 336-37 (1st Cir. 2018); *United States v. Duncan*, 833 F.3d 751, 754 (7th Cir. 2016).

Pulley's delivery argument was recently rejected by the Seventh Circuit. In *United States v. Redden*, 875 F.3d 374 (7th Cir. 2017), the defendant argued Illinois' prohibition against the "delivery" of a controlled substance meant the statute was not a categorical match with the Guidelines which defined a "controlled substance offense" as the "manufacture, import, export, distribution, or dispensing of a controlled substance." U.S.S.G. § 4B1.2(b). The Seventh Circuit disagreed, finding the Illinois' definition of delivery means an "actual, constructive or attempted transfer," and "transfer" was "just another word for distribute or dispense." *Redden*, 875 F.3d at 375. In other words, Illinois' use of the word "delivery" is another way of saying "distribution" and an Illinois conviction under § 570/401 qualifies as a controlled substance offense. *Id.*

*Redden* distinguishes *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) (relied upon by Pulley), because the Illinois statute does not contain the element of "offering" a

10

drug for sale, as did the Texas statute that led the *Hinkle* court to invalidate Hinkle's career-offender enhancement. *Redden*, 875 F.3d at 374-75. *Hinkle* found the elements of the Texas crime did not match the specifications in §4B1.2(b) as it is unlawful in Texas to *offer* a controlled substance for sale, as well as to manufacture, import, export, distribute, or dispense it. *Redden*, 875 F.3d at 375. "Illinois, by contrast, does not make it a crime to offer a controlled substance." *Id.* Therefore, "it would be frivolous for counsel to argue that Redden is not a career offender." *Id.*

Although *Redden* dealt with the Guidelines context, the Government's position is even stronger here in the ACCA arena. The ACCA incorporates the Controlled Substance Act's definition of "distribute," which is "to deliver (other than by administering or dispensing) a controlled substance or a listed chemical." 21 U.S.C. § 802(11). To "deliver" means "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical." 21 U.S.C. § 802(8), *see United States v. Goldston*, No. 17-5540, 2018 WL 3301450, at *2-4 (6th Cir. July 5, 2018). The federal definition of delivery therefore squares with Illinois' definition of delivery. *See Hughes v. Werlich*, No. 18-cv-510-DRH, 2018 WL 1407187, at *2-3 (S.D. Ill. Mar. 21, 2018) (following *Redden* in a section 2241 action, and finding Illinois drug conviction was properly used as a predicate conviction for defendant's sentencing enhancement).

Because Pulley's prior convictions remain predicates under ACCA, he was properly sentenced pursuant to that statute. There was no sentencing error, and Pulley is not entitled to habeas relief.

**ACCORDINGLY:**

Movant Burnis Pulley's Amended Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [DE 9] is DENIED.

**SO ORDERED.**

ENTERED: October 22, 2018

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT